# Harris *v.* Nashville C. & St. Louis R. R.

*Action for Damages for Injury to Child.*

(Decided July 2, 1907.   44 So. Rep. 962.)

1. *Railroads; Obstruction on Track; Stopping Trains; Statute.*— The words used in the statute, section 3440, Code 1896, "such as applying brakes and reversing the engine," requires the doing of all things known to skillful engineers to stop the train after the discovery of an obstruction on the track, but the direction to apply brakes and reverse the engines is suggestive rather than mandatory.

2. *Same; Injury to Child on Track; Affirmative Charge.*—Where the evidence was uncontradicted that the engineer and the fireman did all within their power to stop the train upon discovering the peril of the child, who was a trespasser on the track, and there being nothing from which the contrary could be inferred, the affirmative charge is properly given for the defendant.

3. *Evidence; Expert Testimony; Conclusiveness.*—The testimony of experts that a locomotive can be stopped quicker by not reversing when the air brakes are applied than by both reversing the engine and applying the air brakes, is conclusive on the court and jury, in the absence of any proof to the contrary.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Personal injury action by Annie Bell Harris, by next friend, against the Nashville, Chattanooga & St. Louis Railway. From a judgment for defendant, plaintiff appeals. Affirmed.

[Harris v. Nashville C. & St. Louis R. R.]

E. O. McCORD, and JOHN A. LUSK, for appellant. Under the evidence the plaintiff was not chargeable with contributory negligence.—4 Mayf. Dig. 310. Section 3440, Code 1896, requires that the engineer reverse his engine, and other things mentioned therein, else he is guilty of negligence.—C. of Ga. Ry. Co. v. Foshee, 125 Ala. 218. The word reverse is used in the statute and means more than was done by the engineer.—Webster's Imperial Dictionary; Am. Ency. Dictionary.

OSCAR R. HUNDLEY, for appellee. The bill of exceptions does not pretend to contain all the evidence and the presumption will be indulged that there was other evidence which authorized the giving of the affirmative charge.—Clardy v. Walker, 132 Ala. 264; Sanders v. Steen, 128 Ala. 633; Fleming v. Ussery, 30 Ala. 282. The facts in the case are even stronger than they were on the former appeal of this case. Counsel for appellant in brief makes no insistence that the question of negligence should have been left to the jury.—N. C. & St. L. Ry. Co. v. Walley, in MS.

ANDERSON, J.—It was held by this court, when this case was here before, that the child was a trespasser and the defendant was not liable for a failure to keep a lookout.—N. C., & St. L. Ry. v. Harris, 142 Ala. 249, 37 South. 794, 110 Am. St. Rep. 29.

The only other point made by appellant's counsel for a reversal of this case is that the trial court erred in giving the affirmative charge for the defendant, upon the theory that the evidence shows that defendant's servants, after discovering the peril of the child, did not use all means known to skillful engineers to stop the train. If it be true that the defendant so failed, and said failure was the proximate cause of the injury, or if

there was evidence from which the jury could draw an inference that the defendant's servants failed to use all means "known to skillful engineers" to stop the train after discovery of the child, then the affirmative charge should not have been given in favor of the defendant. When this case was here before the court held that the evidence showed that everything possible was done to stop the train, and that defendant was entitled to the affirmative charge. The engineer and fireman testified upon the former trial that everything in their power was done to stop the train upon discovering the child—"the track was sanded, the brakes were applied, and the engine was reversed." Upon the second trial, and the one from which this appeal was taken, the engineer testified upon direct examination just as he did on the first trial, but stated, further, upon cross-examination, that the wheels were merely brought to a stand, and that nothing was done to give them a backward or reverse movement. He admitted that he made no effort to work the driving wheels of the engine backward; "that the wheels of the engine were not caused to revolve in the reverse direction to which said train was going. He did attempt to explain, and in fact testified, that by working the engine back the train could not be stopped as quick as if the air brakes were applied without working it back or reversing the engine.

Section 3440 of the Code of 1896, among other things, says: "He must also, upon perceiving any obstruction on the track, use all means within his power, known to skillful engineers, such as applying brakes and reversing engine, in order to stop the train." We understand the statute to require the doing of all things known to skillful engineers to stop the train, but that to apply the brakes and reverse the engine is simply suggestive, not mandatory. If the train could be safely and quicker

stopped in some other way, it would be the duty of the engineer, under this statute, to resort to that method, and the doing of the things suggested by the statute, and omitting to do something that would sooner stop the train, would not relieve the company. The result is that if the train could be stopped quicker without reversing the engine, ex vi termini, giving the wheels a backward movement or pressure, then it would be the duty of the engineer to resort to such means, and not reverse the engine. This statute first appeared in the Code of 1867, and was enacted before the use of the air brake, at the time when the only expedient way to stop trains then known was by reversing the engine and applying the hand brakes. Hand brakes were never as effective as air brakes, and, considering the delay that was incident to the application of the hand brake at the time in which they were used, the quickest and most effective way of stopping the train was by reversing the engine. Consequently the only two practical methods then known by which trains could be stopped were suggested in our statute; but it was in no wise mandatory as to all times and under all conditions. The language of the statute is most guarded, and requires the engineers to use all means within their power *"known to skillful engineers"* —not to courts and juries. (Italics ours.) The manifest purpose of the statute is to require the engineer to do all things known to his profession or trade to safely stop the train. The engineer testified, as did the fireman, that all was done within their power to stop the train. The track was sanded, and the air brakes were applied, and the steam was shut off; but the engine was not reversed. The engineer also testified that the train could be stopped quicker by not reversing the engine when the air brakes were applied. The result is we have the uncontradicted testimony of the engineer and fire-

man, the only eye-witnesses, that all was done within their power to stop the train, and that what was done would stop the train quicker than reversing the engine in addition thereto. There being no evidence to dispute these facts, or nothing from which a contrary inference could be drawn, the defendant was entitled to the affirmative charge, unless we hold, as this court did in *Foshee's Case,* 125 Ala. 199, 27 South. 1006, that it is a matter of common knowledge that the reversal of the engine will tend to stop the train quicker, although the air brakes were applied, and notwithstanding experts have testified to the contrary. We think this a scientific question, rather than one of common knowledge, and that it is so regarded by the terms of the statute ("must use all means known to skillful engineers"), and that there is no room for the exercise of common knowledge as against the undisputed testimony of an expert.

This court, in speaking through Stone, C. J., in the case of *L. & N. R. R. Co. v. Binion,* 98 Ala. 574, 14 South. 620, said: "It cannot be supposed that the court is familiar with the mechanical contrivance known as a brake on a railroad car, nor when or how it is liable to become out of repair. Nor can we be presumed to know what causes it to 'stick,' or refuse to let loose the pressure which retards the free revolution of the wheels, and, in consequence, the movement of the train. These are not matters either of judicial or of common knowledge." But, if we are permitted to indulge the application of common knowledge, we cannot indorse the soundness of the *Foshee Case, supra,* in this respect. It may be that upon the first blush one may believe that, when either of two or more forces will accomplish a result, that it can be accomplished quicker by a concurrent application of or resort to all of said forces; but knowledge is not a talent or gift, or what occurs to the human

mind upon the impulse, but comes from experience and investigation, and conclusions first reached are frequently changed by making a thorough investigation. We might say that it is a matter of judicial knowledge that experts have not only testified in this case, but in many others of recent years, that a train can be stopped quicker by an application of the air brake than by reversing the engine and not applying the brake, or than by doing both.—Note 4, Mayfield's Dig., on page 631. Indeed, they have testified that the various railroads throughout the country forbid the reversing of the engine, unless the air brake is out of fix, in order to stop the train. Is it reasonable that these companies with their experience and facilities for testing the quickest way to stop a train safely, would require their employe to do so in a manner known to be a slower way, with a full knowledge of the penalties entailed for failing to use all means known to skillful engineers to stop the train? Indulging in common knowledge acquired from an investigation, but only to the extent of discussing the soundness of the *Foshee Case,* we find that it is not only the opinion of experts that the train can be stopped quicker by applying the air brakes and not reversing the engine than by doing both, but that repeated tests have been made and the result had clearly demonstrated that the application of the air brake alone is the quickest way to stop the train, provided, of course, the brake is in good working order.

In the proceedings of the second annual convention of the Association of Railroad Air Brake Men we find that, after investigating the result of 100 tests to determine "the stopping power with engine reversed, with and without the use of air brakes," the table set out is favorable to the use of the air brake alone as the quickest way of stopping the train, and the result of said in-

vestigation is expressed in the committee's report, and from which we quote, in so far as it applies to this question: "First, The shortest reliable stops will be made by a retarding power which is most quickly developed and maintained to the highest possible limit during the entire stop, consistent with safety from skidding of wheels, such as the air brake gives, and is confirmed by records in the above table. Second. The retarding power given by the back pressure in the steam cylinders when the engine is reversed fluctuates and is too inconstant to be relied on. As soon as the back pressure developed is greater than the adhesion between the wheel and the rail, the driving wheels will revolve backwards and lose nearly all retarding force. Trials were made throwing the reverse lever ahead a sufficient length of time to release the wheels and get them running forward again; but so much time and distance was lost in this effort that the stop exceeded in length that made by leaving the lever in the back motion after it had been placed there. The length of stop was the same, whether the cylinder cocks were opened or closed. When the engine was reversed without brakes, the wheels did not lock rigidly. Third. The length of stop made with air-brakes applied and engine reversed, while being longer and extremely injurious to the tire from skidding and making flat spots, is not as long as was expected, but is satisfactorily accounted for by the fact that the flat spot grew during the stop, and, with the heat developed, gave a larger and better surface to the rail for adhesion. The stop was longer than those made with the brakes alone, and was very costly. The result of these tests should determine the inadvisability of using the reverse lever in conjunction with air brakes." Association of Railroad and Air Brake Men, pages 208, 209, §§ 1, 2, 3.

10 R

If the engineer did all things known to skillful engineers to stop the train, the defendant was not guilty of negligence in this respect; and, in the absence of any evidence to the contrary, the affirmative charge should have been given for the defendant. If it is not true that what he did was the quickest way to stop the train, the plaintiff should be able to get some evidence to the contrary, and not have to rely upon the common knowledge of courts to establish an inference contrary to the unanimous verdict of men skilled in the science of operating trains. If such evidence is not obtainable, that fact alone would confirm the expert testimony heretofore given on this subject. In the absence of some proof to the contrary, this expert evidence should not be questioned by the common knowledge of courts and juries, and the case of *Central of Georgia R. R. v. Foshee*, 125 Ala. 109, 27 South. 1006, is overruled, in so far as it conflicts with what we here say. We do not wish to be understood as treating quotations from opinions of experts, other than those who actually testified in the case, as evidence, as it is used for the sole purpose of demonstrating the error of assuming from common knowledge that the testimony of expert witnesses as to the quickest way to stop a train was untrue.

The judgment of the circuit court is affirmed.

HARALSON, DOWDELL, and SIMPSON, JJ., concur.

McCLELLAN, J. (dissenting). The injury complained of was that of an 18 months' old child at a public road crossing. The pleadings, as well as the material facts, aside from the exception to be noted, are set forth in the report of the former appeal.—*N., C. & St. L. Ry. v. Harris*, 142 Ala. 249, 37 South. 794, 110 Am. St. Rep. 29. The exception referred to is that, on the first trial,

the enginemen testified that, when they discovered the perilous situation of the child, the engine was reversed, the brakes applied, and the track sanded, and all in their power was done in an effort to stop the train and avert the injury; but, on the succeeding trial, the testimony was that the engine was not in fact reversed, because that would have broken the effect of the applied air brake and would have resulted in a longer stop. The opinion of the court holds that the affirmative charge for defendant was correctly given; and the dissent of the writer is based upon two grounds: First, that the affirmative charge should never be given where expert or opinion testimony is the reliance for proof or disproof of a material issue in the cause; second, that the statute (section 3440) commands, under the conditions therein stated, the application of the brakes and the reversal of the engine.

Taking them up in order, the record affirmatively shows that the engineer testified as an expert with 30 years' experience in that capacity; and it also appears that the perilous situation of the child was known to the enginemen when the train was about 150 yards from where she was struck by the engine. The last clause of section 3440 provides: "He must also, on perceiving any obstruction on the track, use all the means within his power, known to skillful engineers, such as applying brakes and reversing engine, in order to stop the train." Assuming, for the present purpose, that the construction given this clause by the court is correct, which embraces the interpretation that the provision for the application of the brakes and reversal of the engine is merely "suggestive, not mandatory," the issue governing the propriety of the charge, under the testimony introduced, was whether the engineer used all the means within his power, known to skillful engineers, among

which the Legislature suggested the brakes and rever-
sal, were applied to stop the train. The inquiry, upon
which the affirmative charge was given, did not involve
the question whether plaintiff had discharged the bur-
den of proof, but the sufficiency of the proof to justify
the giving of the charge. The means themselves, such
as the brake appliances and the reverse lever, are not
alone the means contemplatd by the statute; but they
include such application of them, upon one occasion, as
skillful engineers would employ. If this were not true,
the wise purpose in the statute's enactment could be en-
tirely thwarted by the application of the means required,
but unskillfully, negligently. It follows, as of course,
that since these elements are not expressly defined by
the statute their ascertainment must rest in expert or
opinion testimony. They are not facts as such, and can
only be expressed in opinion, which may be said to be a
mental conclusion arising from the method adopted and
employed to stop the train.

This case, it is thought, is a perfect and practical il-
lustration of the view entertained. There was no other
way for the defendant to acquit itself of the negligence
imputable from its avowed failure to use the suggested
means, or to show that the means used by its engineer
were those within his power known to skillful engineers,
than to invoke expert opinion of witnesses of proven ex-
perience or qualification. In every case, where skillful-
ness in the performance of a duty, or where the selection
of approved skillful means, is an essential element of
the controverted inquiry, expert or opinion testimony is
the only recourse to sustain or refute the proposition.
Even though the witness testified from an actual test,
made under similar circumstances and conditions to
the matter under investigation, his testimony, as it bears
upon the issue, is nothing but a conclusion—an opinion

—to be taken and weighed as such. The test by an expert, and testified to, if admissible, by him, is but a basis for his opinion, and is not testimony, in and of itself, disassociated from his conclusion, which it (the test) only purports to support. If so, the pertinent question is: Can the affirmative charge be properly predicated upon that character of testimony? To quote one, in accord with the rule obtaining here, from time immemorial, by which the propriety of the affirmative charge has been often determined.—Stone, C. J., in *Tabler v. Sheffield Land Co.*, 87 Ala. 309, 6 South. 196, treating an affirmative charge that was framed with hypothesis, said: "To support the general charge, the evidence must be so clear and convincing as that the court could rightly sustain a demurrer to the evidence of the opposite party. If the evidence be in conflict, or if it be circumstantial, or if a material fact in the case rest in inference, the general charge should not be given." To the same effect, where the charge bore the usual hypothesis, are, among others, *Weil v. State*, 52 Ala. 22, by Brickell, C. J., and *Bridges v. Tenn. Co.*, 109 Ala. 294, 19 South. 495, by Coleman, J. The giving of the affirmative charge is a declaration of law by the court, just as its action in sustaining a demurrer to the evidence is a pronouncement of law.

Expert testimony is admitted for the sole purpose of enlightening the jury and aiding it in arriving at a correct conclusion in the premises, but not, though unimpeached, to control its judgment.—Rogers' Expert Testimony, § 207, and note; *Andrews v. Frierson*, 144 Ala. 470, 39 South. 512; *Watson v. Anderson*, 13 Ala. 202; *McAllister v. State*, 17 Ala. 438, 52 Am. Dec. 180; *Anthony v. Stinson*, 4 Kan. 211; *Head v. Hargrove*, 105 U. S. 45, 26 L. Ed. 1028; *Washburn v. R. R.*, 59 Wis. 364, 18 N. W. 328; *Choice v. State*, 31 Ga. 480; 1 Blash. on

Juries, § 238; *A. G. S. R. R. v. Hill,* 93 Ala. 514, 9 South. 722, 30 Am. St. Rep. 65. Whether the subject of the opinion or expert testimony be sanity vel non, value of services, skillfulness in the use or selection of means to effect a purpose requiring skill, or that of handwriting, the principle is the same, viz., that such testimony is but a conclusion, and, if such testimony is made binding on the jury, as the affirmative charge did here, the result is a substitution of the conclusion of the witnesses for that of the jury, which, of course, cannot be allowed. Therefore it seems that, not only was the general charge improperly given below, but also, on the same reasoning, the former opinion in this respect is unsound. Whether the means known to skillful engineers were availed of to avert this injury is clearly shown, in this case, to have rested in the expert opinion of the defendant's witnesses. The principle is illustrated in *McCarthy v. Railroad,* 102 Ala. 193, 14 South. 370, 48 Am. St. Rep. 29; *Jackson's Case,* 136 Ala. 279, 34 South. 994; *Railway v. Welsch,* 155 Ill. 511, 40 N. E. 1034; *Puntenney's Case,* 200 Ill. 9, 65 N. E. 442; Wigmore on Evidence, §§ 461, 1449-1451, and notes thereunder. The fact that the charge hypothesizes upon a belief of the evidence cannot alter the result; because, aside from the requisite clearness of the testimony, if such a charge can only be given when a demurrer to the evidence could be rightly sustained, the jury has no discretion, unless the folly is indulged of inhibiting the giving of the charge under such circumstances, and which is an adjudication that the opposing party is without right to a judgment in his favor, but at the same time committing to the jury the discretion to give the opposing party a verdict, the foundaion of a judgment.

Reference may be here made to the *Foshee Case* in the respect it is overruled. It was therein held that the jury

were entitled to bring their common knowledge and experience to bear in passing upon the inquiry whether a reversal of the engine was one of the skillful means to effect a quick stop, rather than its omission in favor of the application of the air brake. What is above written applies to the *Foshee Case*. In fact, if the views expressed are correct, the overruled principles announced in the *Foshee Case* are unquestionably sound, because, if expert testimony is merely "advisory," and does not conclude, though unimpeached, the jury, it follows necessarily that their common knowledge and experience must be applied in passing upon the credibility and weight of the expert testimony in its sphere of enlightening their determination of the issue submitted. If their common knowledge and experience cannot be applied, then the expert testimony is without testing standard, and must be taken, if given any effect, as conclusive on the jury, which we have seen cannot be done.— *Binion's Case,* cited by the court, does not appear to be in point, for the reason that the common knowledge there denied was of a special mechanical contrivance and its possible defects; whereas in the *Foshee Case* the result of applied friction and the ever operative law of gravitation, both familiar natural laws, was the inquiry. In the former the court was asked to exercise common knowledge of a particular contrivance; and in the *Foshee Case* it was appealed to as regards the effect of two kinds of restraining influences based on the familiar natural laws mentioned.

The second ground of dissent involves a consideration of what seems to be a very serious impairment of a statute which was adopted, and has been for nearly 50 years among our laws, in an effort to conserve life and limb. —Section 3440 originated in the act approved February 6, 1858.—Acts 1857-58, p. 15. No important change has

ever been made in it. If it is granted that the interpretation given the statute by the court is tenable, it is then confessed that the legislative intent was, not to leave the known skillful means wholly unmentioned, but to suggest the brakes and the reversal as the proper means to a skillful performance of the duty enjoined. In this light, it would seem to be at least incautious to assert, to the extent of justifying the affirmative charge, that expert testimony, though unimpeached, was effectual to refute the wisdom of the legislative suggestion of known skillful means which has for nearly half a century stood as law. If a jury cannot be lawfully concluded by unimpeached expert testimony, is it righteously possible that a suggestion, pertinent to the very subject, written and rewritten, enacted and often re-enacted by our law-makers can be denied efficacy by mere expert opinion and conclusion? The quotations used, arguendo, in the court's opinion, concede and demonstrate that, at the time of the test, there existed with reference to what was the best means to the more quickly stop a running train the greatest doubt; and these excerpts come from the "Association of Railroad Air Brake Men," the name and proceedings of which organization indicate some kind of special concern or relation with the air brake, which, in the interest of life and limb, is arrayed, for supremacy, with the statute-suggested method of reversing the engine to stop a train. Whether the relative term "such as" finds its antecedent in the word "means," or in the qualifying expression "known to skillful engineers," it operates to make example of the application of brakes and reversing the engine. The word "such" is given this definition by Webster: "Of that kind; of the like kind; like; resembling; similar; having the particular quality or character specified; the same that—with as." In addition to these meanings, the Century Dic-

tionary defines it thus: "The same as previously mentioned or specified; not other or different; of that class; especially in the phrase 'as such'—'in that particular character'; the same." And, since there is nothing in the statute to show a contrary intent, it is certainly our duty to give the word its ordinary and generally accepted meaning and effect. If so, it is beyond controversy that the intent of the lawmakers was to provide an example of the means to be, in the event, used to stop the train. If, as appears to have been done by the court, the "such as" phrase qualifies the "known to skillful engineers" phrase, then it is even more apparent that the use of the provision is to exemplify those means so known, viz., reversing the engine being stipulated as among them. And, if we take the reasoning of the opinion of the court, the construction given the phrase is sought to be justified by the improvements made in brakes, and, if that is potential against a conceded suggestion by the Legislature of means to stop a train, then it must follow that, if no air brake had been perfected, the matter in hand would not be even mooted. This statute is the basis of a penal statute, and for that added reason ought not to be subjected to such uncertainty. If the statute had only expressed the duty to use all means known to skillful engineers, the status would be entirely different, and the reasoning of the opinion would be sound in the declaration of the enacted purpose to require the use of all means known to skillful engineers, for then improved facilities alone, without the influence of the particularized means to which the lawmaker wrote, would be the measure of the duty the statute commands.

There is another reason against the construction taken by the court. In *Foshee's Case*, it is said: "Certain it is that, in all our experience in dealing with hundreds

of similar cases, it has never before been suggested that reversing the engine is not an improved and powerful means of stopping or reducing the speed of trains; and it is so recognized by the statute law of the state.—Code 1896, § 3440." That action was for an injury suffered in December, 1897. Lacking about 3 months, the statute cited had been in force 40 years. For this long period it had been, in the respect in question, operated under, applied, and embraced by the railroads of this state as the measure of their duty, upon proper occasion, without invoking judicial consideration of the point first taken in the *Foshee Case*. And throughout more than half of this period the air brake was in general use by the improved and well-ordered railways of this country. Under these circumstances, and assuming that the legislative intent to provide for the brakes and reversal of an engine is ambiguous with respect to whether it is suggestive or mandatory, the rule of construction, that long and uniform acquiescence in and action upon and practice under a law, by those sustaining a duty to be performed thereunder, evidencing a contemporary construction of it, is applicable here; and, the Legislature being presumed to be cognizant of it where such contemporary construction obtains with reference to a law and that law is re-enacted or repromulgated, the presumption is strong that in re-enacting or repromulgating the law the Legislature intended it to have the construction previously put upon it.—2 Lewis' Suth. Cons. § 44; Id. § 403, and authorities in note; *Wetmore's Case,* 55 Ala. 198. If this rule of construction is applicable, and it is, can there be any doubt that the legislative purpose was to command the reversal of the engine. If the requirement of the statute in this respect is wrong and hinders the purpose in its enactment, it is the province of the Legislature, not of the courts, to alter it.

In my opinion, the judgment should have been reversed, and the cause remanded.

TYSON, C. J., concurs in the dissent of McCLELLAN, J.

ANDERSON, J.—My Brother McCLELLAN, in the opinion for the minority, grounds the reason for dissent, not only upon the construction given by the majority to the statute (section 3440, of Code 1896), but upon the further reason that the defendant's evidence was merely the opinion of experts and would not sustain the general charge, with the hypothesis, even if the statute was properly construed. The first question has been fully discussed in the original opinion, and I refrain from further consideration of this proposition, and shall briefly reply to the other one, as it was not fully discussed in the original opinion. In fact, the only contention made by counsel for the appellant for a reversal of the cause was upon the right of the trial court to give the affirmative charge, because the evidence showed that the engineer did not reverse the engine.

In the first place, I do not entirely agree that the defendant's evidence was a mere opinion. The engineer stated in detail what he did to stop the train, and also stated that he did not reverse the engine because the quickest way to stop the train was by doing what he did. It may be that a portion of the evidence is in the nature of an opinion, yet it could be considered the statement of a positive fact, based on tests and experience, and to which the witness would be willing to swear as a fact, and as to which he did so swear in this instance, in the absence of any disclosures by cross-examination or otherwise, that he was merely giving his opinion. The cross-examination does not show that the engineer was merely giving his opinion; but the bill of exceptions re-

cites that he "explained to the court and jury how working the engine back would not stop the train as quickly as if it was not worked back." Conceding, however, that it was opinion evidence, and its credibility was for the jury, which is the general rule as to such evidence, with perhaps the exception that it is sometimes a question for the court, when the subject is one for experts alone and one on which the jury cannot be presumed to have opinions of their own (*Leitch v. Atlantic Ins. Co.*, 66 N. Y. 100), the charge submitted the credibility of the evidence to the jury, and, as it was not contradicted, the defendant was entitled to a verdict. Our court has repeatedly held that the general charge, with the hypothesis, should have been given upon undisputed evidence of a similar character to that in question.—*L. & N. R. R. v. Marbury*, 125 Ala. 256, 28 South. 438, 50 L. R. A. 620; *A. G. S. R. R. v. Moody*, 90 Ala. 46, 8 South. 57; *N. & C. R. R. v. Hembree*, 85 Ala. 481, 5 South. 173; *A. G. S. R. R. v. McAlpine*, 75 Ala. 113; *Anderson v. B. M. R. R.* 109 Ala. 129, 19 South. 519; and many other cases, including this identical case on former appeal, 142 Ala. 249, 37 South. 794, 110 Am. St. Rep. 29. Several of the above cases emphasize the fact that the charges worded as the one in the case at bar submitted the credibility of the evidence to the jury, and, if believed by them, they should find a verdict for the defendant. The evidence in this case was undisputed, and, if believed by the jury, entitled the defendant to a verdict. There were no contradictory inferences growing out of a common knowledge on the subject; for, as we held in the former opinion, common knowledge, if resorted to at all, corroborated, rather than contradicted, the engineer.