(82 South. 434)

## LOUISVILLE & N. R. CO. v. GANTER.
### (8 Div. 185.)

(Supreme Court of Alabama.　June 19, 1919.)

1. RAILROADS ⬤⟿400(1, 15)—INJURY TO PERSON ON TRACK—NEGLIGENCE.

In action for death of an intoxicated pedestrian struck at night by a backing switch engine while he was prostrate on the tracks, *held* that trial court properly refused to give affirmative instructions against the right to recover either under the wanton counts or the count charging simple negligence.

2. APPEAL AND ERROR ⬤⟿237(2)—ASSIGNMENTS—REVIEWABLE.

Where no grounds of objection were stated to questions to witnesses or motions made to exclude, assignments predicated on rulings with reference to the testimony elicited cannot be sustained.

Appeal from Circuit Court, Morgan County; O. Kyle, Judge.

Action by R. M. Ganter, administrator of John Ganter, deceased, against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 16 Ala. App. 323, 77 South. 917.

Eyster & Eyster, of Albany, for appellant. Tennis Tidwell, of Albany, and Callahan & Harris, of Decatur, for appellee.

McCLELLAN, J. John Ganter, plaintiff's (appellee's) intestate, was killed at night by a backing switch engine operated by the defendant's (appellant's) servants. The deceased was under the influence of liquor, and had started home. The way to his dwelling, from the business district of Albany was over a route that followed or paralleled two switch tracks used by appellant. At a point between Fourth and Sixth avenues (there was no intervening avenue) the engine causing his death came upon him prostrate, with his head on one of the rails and his body extended, between the cross-ties outside the track. The engine struck his head, killing him. According to the testimony of defendant's five employés on the engine (three switchmen, standing on the footboard of the backing engine, the engineer and the fireman), comprising all who saw the tragedy, their engine killed Ganter. They testified that the engine had ordinary oil headlights at either end; that each switchman had a lighted lantern in his hand; and that the bell on the engine was being rung. Each of these witnesses testified that the engine was running at the rate of eight or ten miles an hour. The engineer, the fireman, and at least one of the switchmen stated that they were looking ahead, along the track, as they approached the place where Ganter was stricken. It was shown without dispute that the engine was supplied with all agencies for stopping it, and that these were in good working order. There was evidence before the jury tending to show that the headlight would cast its rays 50 feet to 150 feet, taking R. M. Ganter's testimony with reference to the front headlight as indicating the distance the rays of the rear headlight would have been cast if, contrary to his testimony, there had been a rear headlight. There was evidence submitted to the jury from which it was inferable that the employés on the engine could have seen the prostrate form of Ganter, in a perilous position, with his head on the rail, when the rays of light, if such were cast over the place where Ganter lay, illumined the situation, disclosing the fact that the object was a human being, and thus advising the engineer and others on the engine, who were looking along the track at such distance from Ganter, as to have enabled the engineer, either from his own information or when appropriately signaled by the fireman or the switchmen, to put in effect the available appliances that would have stopped this engine, running eight or ten miles an hour, before striking Ganter. Furthermore, it was also open to the jury to find that after the discovery of Ganter's perilous position those in control of the engine's movement were negligent, aside from wanton omission, in respect of employing proper care and skill to avert the injury to Ganter.

[1] This summary statement of the reasonably possible deductions the jury were authorized to draw from the whole evidence will suffice, in accordance with repeated declarations pertinent to like circumstances in analogous cases, to vindicate the correctness of the action of the trial court in refusing to give general affirmative instructions against the right of the plaintiff to recover either under the wanton, etc., counts (3 and 4) or the count (5) charging simple negligence. It would serve no useful purpose to enter upon an elaborate, detailed recitation of all the evidence.

The insistence that there must have been two switch engines over that track that night—this to invite a conclusion that the Campbell engine, which killed Ganter, was not being operated at a reckless speed, etc.—was a consideration available on the argument to the jury, not applicable to the issue of law raised by defendant's request for general affirmative instructions against the right to recover under the charges made in counts 3, 4, and 5.

[2] With respect to the several questions propounded to the witness Ganter, seeking to elicit testimony descriptive of the use by the public of this route along or immediately beside the track, no grounds of objection or

---

for the motions to exclude were stated. Assignments predicated on these rulings cannot be sustained.

We find no motion to exclude the matter, the answer of Ganter, set out in assignment numbered 32.

There is no merit in any of the assignments argued in brief for appellant, to all which reference has been made.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.