144 So. 813

## ATLANTIC COAST LINE R. CO. v. JACKSON.

### 4 Div. 660.

Supreme Court of Alabama.

Nov. 17, 1932.

Rehearing Denied Dec. 22, 1932.

A. H. Arrington, of Montgomery, for appellant.

Sollie & Sollie, of Ozark, for appellee.

FOSTER, J.

This case was tried upon subsequent negligence counts—a somewhat different theory than that of the first trial. 221 Ala. 646, 130 So. 388.

If we concede the contention of appellant that as some of such counts do not affirm that knowledge of the *peril* of plaintiff's truck was had by defendant's servants in the operation of its train, and that knowledge of the mere fact that the truck was stopped upon the track does not as a matter of law charge knowledge of the fact that the person in its charge was either not able or willing to extricate it (Northern Ala. R. Co. v. Elliott, 219 Ala. 423, 122 So. 402; 20 R. C. L. 143, § 117; 52 Corpus Juris 366; Central of Ga. R. Co. v. Blackmon, 169 Ala. 304, 53 So. 805), it does not follow that such defect should cause a reversal of the case. The rule is that when a count states a cause of action, though there may be some defect which is pointed out by demurrer, if the action is tried upon the theory that such averment is made, and the jury is required to find in accordance with the correct rule in that respect, the error is held to be without prejudice. So. R. Co. v. Dickson, 211 Ala. 481, 100 So. 665; Best Park, etc., Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann. Cas. 1917D, 929.

If the counts were technically defective in not alleging knowledge of the peril of the truck, but only knowledge that it was stopped upon the track, we note that charge No. 16, given for appellant, places the burden upon plaintiff to show that defendant's servants in charge of the train became aware of the *peril* to plaintiff's truck in time to avoid running against it.

The general oral charge also indiscriminately refers to knowledge of the peril to the truck, and knowledge of its presence upon the track, as, under the circumstances, one was equal to the other. Such is the legal status if there is also knowledge that the truck will not likely be moved off the track—for it to remain is of course perilous. No complaint was made of such treatment by the court. That aspect of the court's charge, made plain by given charge 16, we think, relieves the claim of defective averment on that subject from prejudicial effect.

Objection is further made to the counts that they do not allege that defendant's servants, etc., charged with negligence, were in the operation of the engine. If there be any lack of clearness in this respect, it is sufficient to say that the negligent act is not charged to the servants, etc., of defendant. But it is charged to defendant. The added averment that it was done through agents or servants does not require the averment either that they were in the line or scope of their authority or the nature of their line of duty. A corporate act of negligence is charged. It could not have been done by

the defendant except through some agent or servant in charge of the operation of the engine. Alabama Power Co. v. Conine, 207 Ala. 435, 93 So. 22; Ala. Power Co. v. Edwards, 219 Ala. 162, 121 So. 543.

When negligence is thus charged to defendant, it may be proved by the negligence of any of its agents in the line and scope of their authority. Goodgame v. Louisville & N. R. Co., 218 Ala. 507, 119 So. 218.

It is the defendant which was alleged to have been operating the train. It is the defendant which is alleged to have had notice of the truck on the track and thereafter negligently to have run the engine against it. The fact that, in doing so, it was acting by and through its servants or agents is but the statement of a truism. Such negligence is in "case," and is distinguished from a willful or wanton injury charged to defendant, by its servants, etc., rather than the defendant's servants, agents, etc., when a willful or wanton injury is charged to defendant, it is in trespass. City Delivery Co. v. Henry, 139 Ala. 161, 34 So. 389.

The suit is for damages to plaintiff's truck, alleged to have "stalled" across defendant's track at a private road crossing. Plaintiff testified that when he discovered he could not get the truck off the track, and hearing a train coming, he ran up the track for a distance of about one hundred and twelve steps or yards, and saw the engineer, as the train rounded a curve to its right, looking at him as he flagged with his hat and coat; that when the engineer first saw him, the engine was three hundred and twenty-five yards from him; that it was between sundown and dark, and the engineer could clearly see him for that distance without anything to obstruct the view; that he stepped those distances shortly before the trial, when there were several others present, including Levi Powers and John Powers.

■■ Complaint is made by appellant that the court permitted Levi and John Powers to testify that on that occasion a demonstration was made by members of the party as a result of which it was disclosed that when a man stands where plaintiff testified he was standing in giving signals to the engineer, and one standing on the rail, under the engineer's seat on that engine, in the curve and becomes visible from around the curve to the one standing in plaintiff's position, the distance between them is three hundred and twenty-four or three hundred and thirty steps. The question is whether there was error in such ruling. Plaintiff had testified that it was not dark, and in effect that it was clear daylight though after sundown. There was conflict as to whether the headlight was burning. The evidence showed that the curve was in a cut, so that the position of the engineer on the engine was such as to make him

visible ordinarily a greater distance than was the man on the ground; also, that since the occurrence some of the bank in view had been removed; it not appearing exactly how much. This evidence was in line with that which had been given by plaintiff and was material upon the question of the distance from the engineer to where the truck was stranded, and whether the train could have been stopped in that distance, when the engineer may have seen the truck.

The claim is made that evidence of experiments or demonstrations is not admissible. We do not think that the rule of exclusion applies to all such experiments or demonstrations. The rule is based upon a reasonable study of whether the evidence "tends to enlighten the jury and enable them more intelligently to consider the issues presented. Where the experiment is inclusive, or raises a number of collateral issues, or the evidence seems to the court not to promise results justifying the use of the time required to hear it, a party cannot insist upon producing it." It is also said to be largely discretionary with the trial court. 22 Corpus Juris, 755, 756. §§ 843, 844. The subject has been discussed in several of our cases. In Ala. Great So. R. Co. v. Burgess, 114 Ala. 587, 22 So. 169, 172, the question was, How far from the place of injury children on the track could be seen and recognized as such by the engineer? The answer did not depend upon, and it was not an effort to determine, the distance in which the view was open and unobstructed, but the distance in which the normal eye and intelligence could discover the character of the object. The court held that such evidence did "not furnish, or aid in furnishing, a safe guide to the jury."

In the case of Sherrill v. State, 138 Ala. 3, 35 So. 129, the question was whether certain witnesses could have seen the difficulty on account of trees and bushes between them and it. Others had before the trial some months after the difficulty gone to the scene to experiment to determine that question. The court held that their evidence was not competent, citing the Burgess Case, supra. But the state of the foliage on the trees and bushes was the controlling condition in that respect. After four months, such foliage so changes as to be no safe guide to its condition before.

In the case of Birmingham, S. & R. Co. v. Vanderford, 217 Ala. 342, 347, 116 So. 334, 339, many of our cases are cited on various aspects of the question. The purpose there was by experiment "to locate the distance in which the parties were visible to and from the corner." It was noted that a "tree was mentioned and its change of foliage" at a different time of the year. It was held error thus to determine "the points or distances of the range of vision." We understand that to refer both to the extent the eye would then

carry intelligent vision, and also to the effect upon it of the foliage of the tree.

In the instant case its purpose was to determine the point at which the vision of the engineer to the scene of the accident became unobstructed by reason of the curve in the cut. While there had been some lowering of the cut, the engineer in the cab was much higher than a man on the ground. Plaintiff had testified from his observation that the distance was about three hundred and twenty-five steps. To corroborate such statement the experiment was made and found to be in substantial accord with his estimate. There was no question of whether the eye could discern an object for a certain distance, but whether the vision for that distance was obstructed. The only difficulty is that the embankment had been lowered some in the interim. But in view of that fact we cannot say that the evidence was not of legitimate value and a proper aid in weighing the evidence given by plaintiff with respect to such distance. Taking the setting of this evidence in connection with that of other witnesses, we are not willing to hold that it was reversible error to receive it.

With respect to refused charge A, we note that it makes the opinion of the expert conclusive on the jury—in reliance upon the statement in the third headnote in Harris v. Nashville, C. & S. R. Co., 153 Ala. 139, 44 So. 962, 14 L. R. A. (N. S.) 261. The opinion does not justify that headnote. It does not affirm that such evidence is conclusive on the jury, but, as explained on page 156 of 153 Ala., 44 So. 968, and in the case of Lawson v. Mobile Electric Co., 204 Ala. 318, 323, 85 So. 257, it holds that when such evidence is not contradicted, it justifies the general charge based upon the hypothesis that the jury believes the evidence. But neither in that case nor any other that we know of has this court held that such testimony is conclusive on the jury. It is only so, if they believe it to be true. On the other hand, we have a well-established rule that such evidence is not conclusive on the jury, and they are not bound by it. Robinson v. Crotwell, 175 Ala. 194, 57 So. 23; Batterton v. City of Birmingham, 218 Ala. 489, 119 So. 13.

To say that the testimony of any witness is conclusive upon the jury clearly invades its province to pass upon the credibility of the witness. A like situation obtains in respect to evidence of the proper equipment and operation of an engine which has set out a fire. When there is no conflict as to whether it was properly equipped and operated, either direct or circumstantial, the affirmative charge, with hypothesis, is due to the defendant. Many of our cases follow the early case of Louisville & Nashville R. Co. v. Marbury Lbr. Co., 125 Ala. 237, 28 So. 438, 50 L. R. A. 620, in this respect. They are too numerous to mention. Certainly a directed verdict for defendant would be improper, and likewise it would be improper to instruct the jury that the evidence showing proper equipment and operation is conclusive on the jury.

We do not find reversible error among the assignments, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.