13 So.2d 877

### LOUISVILLE & NASHVILLE R. CO. v. SULLIVAN.

### 6 Div. 108.

Supreme Court of Alabama.

May 27, 1943.

Rehearing Denied June 24, 1943.

Foster, Rice, Madison & Rosenfeld, of Tuscaloosa, for appellant.

E. D. McDuffie, of Tuscaloosa, for appellee.

GARDNER, Chief Justice.

This suit is to recover for personal injuries sustained by the plaintiff when a freight train of defendant railway company ran over his left leg some several inches above his ankle, completely severing the foot. The case was submitted to the jury upon two counts, one basing recovery upon the theory of subsequent negligence and the other wantonness. There was a verdict and judgment for plaintiff in the amount of $1,650, from which defendant prosecutes this appeal.

In the opening statement of the defendant's counsel there was some indication of a theory that the plaintiff intentionally placed his leg across the rail of the track and sustained the injury for the purpose of evading army duty, as he was a young man 22 years of age on his way to report a second time to the military authorities. If there was sufficient evidence justifying an inference to sustain this theory, no question is here presented concerning it.

Plaintiff insists that he was walking across the track (it was about 9 a. m. on a clear day) and had passed the first rail, but that in stepping over the second rail his foot in some manner (details unimportant) was caught in a bolt where the rails are joined together, which threw him

to the ground face downward. He further insists that this fall stunned him for a few seconds (fifteen or twenty) and when he looked up the train was right upon him, though as he started across the track he neither saw nor heard the approaching train. This was a freight train carrying some twelve or thirteen empty cars, travelling at a slight upgrade and at a speed of about twenty miles per hour.

■■■ Plaintiff was travelling a path crossing this track at this particular place which had been used for at least thirty-five years by the people in that community. He was on his way to East Brookwood to the bus station. This pathway had been so used these years by the people who walked from Kellerman, from Searles and from West Brookwood to East Brookwood, at all hours of the day and night, according to plaintiff's proof. Several hundred people live in those communities. Plaintiff testified that the crossing where this accident happened was in the village of West Brookwood. We think that this was a statement of fact which appears to be from this record undisputed, and not objectionable as merely stating a conclusion of the witness. The cases of Crotwell v. Cowan, 236 Ala. 578, 184 So. 195, and Central of Ga. R. Co. v. Faulkner, 217 Ala. 82, 114 So. 686, noted by defendant, are inapplicable on the facts and hold nothing inconsistent with this conclusion. The assignment of error based upon a contrary theory is without merit.

■■■ On crossing the track plaintiff was not a trespasser. Birmingham Light & Power Co. v. Jones, 153 Ala. 157, 45 So. 177; Glass v. Memphis & Charleston R. Co., 94 Ala. 581, 10 So. 215. It would appear, therefore, from the testimony offered by the plaintiff that the question of a populous crossing was one sufficient for submission to the jury, and that a duty rested upon those in charge of the train to keep a lookout or to give warning signals of its approach. Southern Ry. Co. v. Stewart, 179 Ala. 304, 60 So. 927. And the evidence tends to show the only warning signal was the blast of the whistle at the public road crossing one-fourth of a mile south of this particular location.

The defendant offered no proof save the answers to interrogatories propounded by the plaintiff, which the plaintiff himself had introduced in evidence.

Plaintiff propounded the following interrogatory to the defendant: "For what distance prior to the time said engine collided with or ran over plaintiff, said engineer was in his cab looking down the track towards the point where plaintiff was run over?" The engineer answered: "Lookout was maintained at all times except when duties necessary for the operation of the locomotive required attention on the inside of the engine cab." Considering the precise wording of the inquiry, the answer may be considered somewhat evasive, and we think the jury might well have inferred that the engineer at the time was in his cab looking down the track for a distance of 175 yards, as this was the distance the evidence tended to show the view of the engineer was unobstructed. The engineer himself testified: "At a point between 100 and 200 feet from the scene of the accident engineer saw an object, not on, but outside of and in the clear of the track, and lying at a right angle to the line of the rail. At this distance, due to the terrain and inertness of the object, it could not be distinguished as a person. When within 20 feet of the object engineer discovered that it was a person, for the person raised his head, looked at the approaching train, and then lowering his head, he placed it upon his arms which were folded on the ground."

Upon discovering this fact, the engineer testifies further that he closed the throttle on his engine and applied engine and train brakes in emergency application. There was evidence, however, to the effect that he should have reversed his engine and applied sand. Plaintiff offered testimony of an expert witness to the effect that a train equipped as was this train running at this speed of 20 miles an hour, as indicated in the present case, could have been brought to a stop within a distance of 100 feet, travelling as it was on a slight upgrade on a dry track.

There appears to have been no warning signal whatever, but that all the engineer did was to close the throttle and apply the engine and train emergency brakes when within 20 feet of the plaintiff. From a consideration of his own testimony the engineer saw the plaintiff when 200 feet distant. There was proof from which the jury could reasonably infer the engineer could have recognized plaintiff as a human being at this distance as he lay prone upon the ground with one leg across the outer

rail. This was in ample time, according to some of the proof, for the train to have come to a full stop. Not only so, but we think the jury could reasonably infer that a blast of the whistle (which was not given) might have stirred the plaintiff to an extra and speedy effort to extricate himself from his perilous position.

This was the morning of a clear day, and as we have previously stated, the train was approaching what the evidence tended to show was a populous crossing. The case is sharply differentiated on the facts from Southern Ry. Co. v. Drake, 166 Ala. 540, 51 So. 996, cited by the defendant.

■ Though the engineer did state that he failed to recognize the plaintiff as a human being until he was practically upon him, i. e., within 20 feet, yet we are persuaded that under all the proof, the jury might infer, as we have just observed, that he discovered his position at a much greater distance and failed to use the precautionary measures at hand, or to give any warning signal whatever. The argument for the defendant assumes, also, that plaintiff was prone upon the ground when he could first have been discovered. But we are unable from this record to reach that positive conclusion. Plaintiff, according to his theory, was merely crossing the track, stumbled and fell. His fall was evidently a matter of a few seconds only. As we have previously indicated, the engineer's view was unobstructed for some 425 feet. In view of the evidence tending to show this a populous crossing, and the engineer looking ahead, we are unwilling to hold the jury could not reasonably infer the engineer, if properly discharging his duty, did not see the plaintiff in the act of falling. Central of Ga. Ry. Co. v. Lee, 227 Ala. 661, 151 So. 840; Central of Ga. Ry. Co. v. Motherwell, 227 Ala. 300, 149 So. 820; Central of Ga. Ry. Co. v. Ellison, 199 Ala. 571, 75 So. 159; Southern Ry. Co. v. Jones, 21 Ala.App. 547, 109 So. 894; Louisville & N. R. Co. v. Holland, 173 Ala. 675, 55 So. 1001; Southern Ry. Co. v. Stewart, supra; Louisville & N. R. Co. v. Ganter, 203 Ala. 184, 82 So. 434; Southern Ry. Co. v. Shelton, 136 Ala. 191, 34 So. 194. Under these authorities, and others to like effect that might be cited, we are of the opinion under the evidence in this case the affirmative charge was properly refused, both as to the subsequent negligence and the wanton counts.

■■ Photographs of the scene of the accident showing the path leading to the railroad and the surrounding situation were admissible in evidence. Atlantic Coast Line R. Co. v. Jackson, 225 Ala. 652, 144 So. 813. Plaintiff, in offering several photographs in evidence, testified that at the time they were taken conditions were the same as they were on the day of the accident. This testimony may properly be interpreted as including all conditions. Witness Langan, an expert photographer with much experience in taking pictures of scenes of accidents and the like, testified, as to Exhibit 1, he was some 300 feet from the point of the accident, and as to Exhibit 2, some 400 feet. He states he was standing in the middle of the track, and that he could distinguish the plaintiff as a human being from those distances. The evidence tended also to show that, of course, the engineer sitting in the cab of the engine had a more advantageous view.

■ Plaintiff had previously testified that when these experiments were made he was lying in the same position as when he received his injury, and, as previously noted, the conditions were the same. The criterion for the admissibility of evidence of experiments is whether such evidence tends to enlighten the jury and enable them more intelligently to consider the issues presented. 22 C.J. 755; 32 C.J.S., Evidence, § 587. It is clear enough the proof as to these experiments comes within this rule of admissibility.

■ On cross-examination of the witness Langan, however, he stated that the plaintiff was dressed in a pair of overalls and "kinda a grey and white—I'll say, a light grey shirt." Plaintiff in his testimony on cross-examination stated that on the day the accident occurred he had on a brown-striped shirt and a lumber jacket, and that the lumber jacket was blue. Because of this discrepancy defendant moved to exclude the pictures from the evidence, and excepted to the action of the court in overruling the motion. We find in this no error to reverse. The evidence of the witness Langan indicates rather clearly that his ability to ascertain from those distances that the plaintiff as he lay upon the ground was a human being was by no means dependent upon the fact that he was wearing a grey shirt. He points out on the pictures also the overalls. Moreover, the testimony of the plaintiff himself

490

may be well interpreted as presenting some conflict in the testimony to that of Langan as to the character of shirt he was wearing on the two occasions.

Of course, there must be similarity of conditions to give an experiment sufficient probative value to warrant its admission, and if the conditions were dissimilar in an essential particular, the evidence should be rejected. But the authorities are to the effect that it is not necessary that the conditions should be exactly identical. A reasonable or substantial similarity suffices, and the lack of exact identity affects only the weight and not the competency of the evidence. It is for the court to determine whether the conditions are sufficiently similar to warrant admission of this proof, and much must be left to the sound discretion of the trial judge. 22 C.J. 759, 756; 32 C.J.S., Evidence, §§ 590, 587. We had occasion to consider this question in Atlantic Coast Line R. Co. v. Jackson, supra, where the text of Corpus Juris was approvingly noted, and some of our cases distinguished.

Upon a consideration of all the proof and in the light of the established rule, we are unwilling to hold that the trial court committed error to reverse in its refusal to grant the motion to exclude these photographs.

In the light of all the evidence it cannot be said the trial court committed error in overruling objection to argument of counsel for plaintiff which forms the basis of assignment of error No. 11. Like observation is applicable to the ruling on the motion for a new trial.

Finding no reversible error in the record, the judgment is due to be affirmed.

Affirmed.

BOULDIN, FOSTER and LAWSON, JJ., concur.