**71 So.2d 108**

### ALLEY

#### v.

### BIRMINGHAM ELECTRIC CO. et al.

#### 6 Div. 364.

Court of Appeals of Alabama.

June 2, 1953.

Rehearing Denied June 23, 1953.

Taylor, Higgins, Windham & Perdue, Birmingham, for appellant.

J. P. Mudd and E. M. Friend, Jr., Birmingham, for appellees.

PRICE, Judge.

Birmingham Electric Company, a corporation, and Tubular Service Corporation were sued jointly by appellant to recover damages for personal injuries sustained by her as a result of a collision between a bus of Birmingham Electric Company, upon which appellant was riding as a fare-paying passenger, and a motor vehicle of the Tubular Service Corporation.

There was a verdict and judgment for plaintiff for $500.

Plaintiff filed a motion for a new trial because of inadequacy of the damages assessed by the jury. The court's action in overruling such motion is the sole question presented for review.

 The principle is well recognized and has been stated many times that in cases of this character where there is no fixed legal standard for the measurement of damages and no certain rule prescribed for the guidance of the jury, the amount of damages must be left to the jury's discretion and the trial court will not disturb the verdict even if the damages awarded by the jury appear to it to be too much or too little. When the trial court has refused a new trial on account of the amount of the recovery, the appellate court is very reluctant to substitute its judgment for that of the jury and court below, and the judgment will not be reversed on that ground alone unless the amount is so excessive or so grossly inadequate as to be indicative of passion, prejudice, corruption or other improper motive on the part of the jury. Alabama Great Southern R. Co. v. Randle, 215 Ala. 535, 112 So.

112; Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447; Alabama Great Southern R. Co. v. Baum, 249 Ala. 442, 31 So.2d 366; Pacific Fire Ins. Co. v. Overton, 256 Ala. 400, 55 So.2d 123.

The evidence showed the force of the collision threw plaintiff from her seat on the bus up against the seat in front of her. Her hands and knees struck the seat and were discolored, but the principal injury sustained by her was to her back. She was en route to the Children's Hospital to visit her sick child. She continued to the hospital on another bus and was driven by someone from there to her home. She was suffering from her back and head and Dr. W. R. Ward, her family physician, was called. He administered a sedative to ease her pain. Two days later he gave her something stronger than on his first visit. The accident occurred on Wednesday and plaintiff was confined to her bed at home until the following Monday when she went to Dr. Ward's office. Her back was strapped and X-rays suggested.

On Wednesday she went to see Dr. Earle Conwell, an Orthopedic Surgeon. He was chief orthopedic surgeon for the Tennessee Coal, Iron and Railroad Company for several years and was associated for many years with Dr. John Sherrill. He is the author of several books on orthopedic surgery. His qualification to testify as an expert was admitted by appellee.

Dr. Conwell testified he made a manual examination of plaintiff's head, neck, shoulders, back and lower extremities and had X-rays made. The X-rays disclosed no broken bones. She had definite muscle spasm and limited motion of the back, especially the lower part, the area of the lumbar spine and sacro-iliac. A muscle spasm is a tightness of muscle when any effort is made in using an extremity or part of the body where they have a tightness of muscle, almost like a person having a Charley horse the next morning after exercise the day before. A person cannot voluntarily cause a muscle spasm in his or her back unless he or she is a contortionist. Muscle spasm is one of the recognized symptoms of an injury to the spine and lower back. The limited motion of the lower back was in normal bending forward and backward and to each side, all four directions, but mainly backward and forward. Plaintiff also had pain in her chest. Her condition was calculated to cause pain and suffering.

Dr. Conwell prescribed diathermy, a short wave type of heat that goes deeper than the average type of external heat. He prescribed and had made for her a surgical garment, a type of corset, to relieve the muscle spasm and make her more comfortable. He also prescribed hot baths, an electric pad, limited activity and rest. Plaintiff visited his office for treatment at frequent intervals from July 19, 1950, to March 10, 1951. For several weeks she received treatments practically every day. Lately, she has been treated about twice a week. From the beginning she showed improvement, but for the last six or eight weeks her condition has been more or less stationary.

In Dr. Conwell's opinion appellant has no permanent disability. She has some disability now which may run three or four months, or six months or longer, which prevents her from carrying on the ordinary duties of a housewife without considerable discomfort, but eventually she will get all right. She will continue to have pain for awhile and he has recommended that she continue to wear the support, take heat treatments at home, with limited activities.

Dr. Conwell's charge for his services to the trial date was $250 to $275, which was declared to be reasonable.

The doctor testified on cross-examination there was no visible evidence of bruises, cuts or swelling when he first examined plaintiff a week after the accident. No confinement was considered necessary, either in the hospital or in bed at home.

The X-rays disclosed an arthritic condition in the upper and middle part of the back and neck. This was not caused by

the accident, but arthritic changes sometimes flare up by reason of accidents. This condition would not cause the pain in the lower portion of her back, but might have some effect upon her headaches. He saw plaintiff each three or four days when she first started coming to the office, and later saw her once a week or each ten days. On most of her trips to the office an assistant gave the heat treatments.

He stated that he, of course, had to rely on plaintiff's statements as to the degree of pain which she was suffering. He presumes she wears her brace at intervals at the present time. It is his opinion she wears it off and on.

Appellant testified she still had considerable pain in the lower part of her back and still wears the surgical girdle. Since the accident she has done cooking but has not performed her normal household duties and has done no mopping or sweeping.

The defendant contended that plaintiff's injury did not prevent her participation in various activities as disclosed by her testimony on cross examination. She stated she drove to Tuscaloosa, in January, 1951, in an automobile, for a dance, but said she did not participate in the dance. She took a Red Cross First Aid Course in February, 1951, covering 19 hours over a ten-day period. She attended all classes and received a certificate upon completion of the course, but she insisted she did not take part in the manual manipulation, such as artificial respiration, etc. She attended three meetings of the Veterans of Foreign Wars Auxiliary. She went to these meetings by cab or bus.

Appellant's counsel urges that the rule applies here that although opinion evidence is not conclusive on the court and jury, where the opinion of an expert is based upon facts such as tests and personal examination involving scientific processes, methods and knowledge, and such expert opinion is not contradicted by other evidence, the court and jury may not disregard such expert opinion, but must give effect to it, relying on the following authorities for such contention: Harris v. Nashville C. & St. Louis R. R., 153 Ala. 139, 44 So. 962, 14 L.R.A., N.S., 261; Aetna Life Ins. Co. v. Norfleet, 232 Ala. 599, 169 So. 225; Alabama Power Co. v. Sides, 229 Ala. 84, 155 So. 686; Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755.

His insistence is that the nature and extent of plaintiff's injuries were proven solely by Dr. Conwell, an admittedly qualified expert who testified to facts, the existence or non-existence of which could be ascertained only by scientific processes, methods and knowledge, such facts being uncontradicted by any other witness, and that the amount of the verdict is indicative of the fact that the jury either disregarded the expert's uncontradicted evidence as to appellant's injuries, or capriciously refused to allow just and adequate compensation for such injuries.

The jury awarded $500 to plaintiff. Dr. Conwell's charge was $250 to $275. Under the evidence the injury to plaintiff's back was not permanent. The claims based upon the injury to her person and pain and mental suffering were not susceptible of pecuniary measurement by any fixed standard. From the evidence as disclosed by the record we are unable to say that the jury has overlooked any substantial elements of damage. Nor can we say that the verdict evidenced such an abuse of the jury's discretion as to indicate bias, passion, prejudice or other improper motive on the part of the jury.

We cannot say the trial court erred in refusing to grant a new trial on the ground of the inadequacy of the verdict.

The judgment is affirmed.

Affirmed.