BERNARD LECHLER, Respondent, v. MONTANA LIFE INSUR-
    ANCE COMPANY, OF HELENA, MONTANA, a Corporation,
    Appellant.


(186 N. W. 271.)


**Insurance — insurer's agent for soliciting insurance held insurer's and not
    insured's agent when soliciting reinstatement.**

> Action upon an insurance policy. The policy had lapsed for non-
> payment of the second premium. Agents of the insurance company
> solicited reinstatement and obtained the signature of the policy holder
> to a reinstatement blank, and a note for the premium, giving him as-

surance at the time that upon receipt of his application and note the policy would be reinstated by the company. Five weeks later the actuary returned the note to the agent who sent it, stating that it could not be received in payment and suggesting that further attempts be made to secure payment of the premium partly in cash. The policy holder was not notified and the note was not returned to him. About six weeks later, the policy holder died. It is *held*:

An agent of an insurance company with authority to solicit applications for insurance is the agent of the company within § 6632, of the Comp. Laws of 1913 and not of the insured while soliciting an application for reinstatement.

**Insurance — insurance policy clause against waiver by agent may be waived.**

2. A clause in an insurance policy to the effect that it cannot be altered by an agent or its provisions waived, except by written agreement of the company, is for the benefit of the company and may be waived by it.

**Insurance — where insurer's agent led insured to believe that by conforming to stated requirements his policy would be reinstated and he complied, the insurer, by neglecting to notify of rejection, waives nonliability clauses.**

3. Where a policy holder is led honestly to believe that by conforming to certain requirements stated by an agent, his policy will be reinstated, and where he complies with the requirements and thereafter the company neglects to notify him that his reinstatement application is rejected, it waives the provisions of the policy under which its non-liability might otherwise be asserted.

**Contracts — where offeree is under duty to notify offerer that his proposal is rejected, failure to communicate rejection may result in legal assent.**

4. Where the relations between parties are such that an offeree is under duty to notify the offerer that his proposal is rejected, the failure to communicate the rejection may result in legal assent to the terms of the offer.

Opinion filed Dec. 1st, 1921.   Rehearing denied Dec. 30, 1921.

*O. W. McConnell, Keohane & Jones* and *G. J. Oppegard,* for appellant.

The insured is as a matter of law presumed to know the terms and conditions set forth in his contract of insurance, and that the same are binding upon him. Clevenger v. Mutual Life Insurance Co. 2 Dak. 114, 3 N. W. 313; 14 R. C. L. p. 986, § 159.

"A stipulation in the policy that no agent has power to modify the

terms of the contract or waive its conditions is notice to the insured of limited authority of the agent in these respects, and under such a stipulation, insured cannot reply on any actual conduct of the agent as constituting a modification or waiver." 25 Cyc. 861, and cases cited in note 37 thereunder; Johnson v. Aetna Ins. Co. 107 Am. St. Rep. (Ga.) 123.

"Estoppel or waiver involves knowledge or notice of that which the company estoppes itself from insisting upon, or waives the right to insist by way of defense, and in absence of knowledge or notice the company is not precluded from asserting the defense." Lamb v. Prudential Ins. Co. 22 N. Y. App. Div. 552, 48 N. Y. Suppl. 123; Northern Assurance Co. v. Grandview Bldg. Ass'n. 183 U. S. 308 46 L. ed. 213.

*Simpson & Mackoff,* for respondent.

"Where an insurance company has once manifested an intent to waive a forfeiture, it cannot subsequently withdraw the waiver unless for fraud on the part of the insured." Beauchamp v. Insurance Company, 38 N. D. 483.

"An agent clothed with the power of soliciting insurance, delivering policies and collecting premiums is a general agent, and as such has power to waive forfeitures and conditions in the policy, notwithstanding the provision therein that no agent has such power." Continental Casualty Co. v. Johnson, 119 Ill. 93, 1 C. J. 406, note 19 (a.)

"An agent may waive payment of premium." North American Accident Insurance Company v. Bowen, 102 S. W. 163.

"Where a clerk of a general agent induces the insured to believe that he has paid the premium due from the insured, the company is estopped to deny payment." Union Casualty Co. v. Bragg, 63 Kans. 291, 65 Pac. 272.

"General agents have authority to bind the company within the apparent scope of their authority although they act in disregard of instructions not known to the persons contracting with them." 22 Cyc. 1430, § B.

"The acts of the insurance agent are binding on the company." 11 L. R. A. note on p. 342 and cases cited.

In which case it is held:

"A local insurance agent having ostensible general authority to solicit applications and make contracts for insurance and to receive first premiums binds his principal by any acts or contracts within the general

scope of his apparent authority, notwithstanding an actual excess of authority. Stearns v. Merchants Life & Casualty Company, 38 N. D. 524.

"A general agent of a company, that is, one empowered to enter into contracts, take risks and receive premiums has general authority to dispense with conditions in policies issued through his agency in the absence of any limitation upon such authority known to the insured, for such acts are within the apparent scope of his authority." Royal Neighbors of America v. Noman, 52 N. E. 264, particularly that part of the opinion found on p. 266; 75 Ill. App. 566; Home Fire Insurance Company v. Kuhlman, (Neb.) 78 N. W. 936.

BIRDZELL, J. This is an appeal from a judgment in favor of the plaintiff, which was entered on the verdict of a jury. The facts are as follows: The plaintiff is the beneficiary of a life insurance policy issued by the defendant on the life of his uncle, Henry Boerger. The policy was issued on November 17, 1917, in the sum of $5,000. The premiums were payable on November 17th of each year, with the proviso that, after the policy had been in force a year, 31 days of grace would be allowed. The insured paid the first premium by giving a promissory note. When the second premium became due the insurance company sent an official receipt to the Beach State Bank of Beach, N. D., with instructions to deliver it to the insured upon payment of the premium. The insured had notice that the receipt had been sent, but he did not pay the premium to the bank, nor forward it to the company within the grace period, and the policy lapsed, according to its terms, on December 19, 1918. On the 3rd or 4th of February, 1919, James McGowan, a general agent of the defendant company, and James Haigh, an insurance agent of the same company, called at the farm of Henry Boerger, the insured, for the purpose of obtaining payment or renewal of the first premium note. At this time they also obtained the signature of Boerger to an application for reinstatement of the policy; it being agreed that he should give a note for the renewal premium. Two or three days later, Boerger went to the office of Haigh in Beach, and signed a promissory note for the full amount of the second premium, payable to the order of the Montana Life Insurance Company, and due on or before June 17, 1919. In a letter dated February 6, 1919, Haigh forwarded the application for reinstatement, together with the note, to the defendant company at

Helena, Mont. It seems that this letter was not received by the company until some two or three weeks later. The body of the letter is as follows:

"Find inclosed reinstatement application of Henry Boerger; also a six months' note for the premium. Mr. Boerger wants to carry this insurance. He had almost a total failure of crop last year, and had planted a large acreage. His plans are to put in a big crop this year.

"Mr. Boerger owns an improved 320-acre farm and has a small mortgage on the farm. Trusting with this information before you, you will find it good business, and reinstate him, I am,

Yours very truly, J. A. Haigh."

March 13th the defendant company replied to Haigh's letter as follows:

"We have received the application for reinstatement of policy No. 11949, together with note which is returned herewith.

"I regret to say, Mr. Haigh, that we are not permitted to accept bank form notes for full first renewal premiums. Would it be possible to handle this note in any other way?

"We inclose a company form note which we would be quite willing to consider in this matter if accompanied by a cash deposit of $109.90.

"The least amount of cash that I am permitted to accept with a note in extension of the first renewal premium is arrived at by taking the short-term rate which you will find in the rate book at the insured's attained age and multiplying the monthly premium per thousand by the number of thousands of insurance and then by the number of months from the due date of premium to due date of note.

"Would it not be possible for Mr. Boerger to borrow locally enough to accept this proposition?

"We also inclose blank application for reinstatement because the one which was sent in was filled out, 'I hereby represent that since the 17th day of November, 1918.' We would like to say that the reinstatement blank must show his condition since the date of the policy, and not merely since the due date of the premium. In this case, for example, he might have had a serious accident or illness in September, 1918, and in that case the question was correctly answered by him, but the company would not be protected. I know that Mr. McGowan would not have witnessed the application and handled the matter had he had any doubts of the ap-

plicant's condition, but the only way we can protect ourselves in case of difficulty and to prevent discrimination is to have every blank properly filled out. A strange examiner coming in would not take Mr. McGowan's signature as meaning what you and I know it does mean.

"I hope that you will let me know what you think of this case. It is evidently fine business, and we want it on the books if there is any possible show to get it.

"With best wishes, we are,

Very truly yours,

"C. E. Herfurth, Actuary."

This letter was received by Haigh in due course of mail, but its contents were never communicated to Boerger, and the note which Boerger had given was not returned to him. About six weeks later, or April 29th, Boerger died, and the beneficiary brings this action, claiming that the policy was reinstated, or that the defendant is precluded from asserting that it was not reinstated.

The policy provides that if any premium is not paid as provided in the policy, it may be reinstated at any time to its original form and amount on payment of arrears of premiums, with interest at the rate of 6 per cent. per annum, and upon evidence of insurability satisfactory to the company. The principal contention of the appellant is that the agency of McGowan and of Haigh was limited to the solicitation of insurance through original application; that neither of them had any authority to alter the terms of the contract in so far as payment of premiums was concerned; and that, as this limitation of authority appears in the policy itself, the insured was not justified in relying upon any representations made at the time the reinstatement application was taken. The policy provides as follows:

"No agent can make, alter or discharge this policy or extend the time for the payment of premiums, nor can the policy be varied or altered or its conditions waived or extended in any respect, except by the written agreement of the company, signed by the president or secretary, whose authority will not be delegated."

The agency contract of McGowan is in evidence. In it he is appointed general agent for six counties in western North Dakota, with authority to secure applications for insurance and forward them to the company for approval or disapproval. Haigh was a local agent, whose authority

to act for the company is presumably more limited than that of McGowan. The evidence tends to establish that at the time McGowan and Haigh were at Boerger's place for the purpose of securing a settlement of the first premium note they solicited him to apply for reinstatement of his policy, and that in that connection they represented to him that if he would give his note for the premium he would be reinstated. McGowan produced a reinstatement application, which he filled out, and which Boerger signed; McGowan witnessing the application.

In our view of the case it is not necessary to determine whether or not McGowan had authority, either actual or ostensible, to waive the provisions of the contract regarding the payment of premiums. We are of the opinion that he was acting within the scope of his agency in soliciting the reinstatement. This he was doing in the interest of the company, and he had apparently been supplied with blanks to the facilitate the transaction of this character of business for it. In transacting it, he was not acting as the agent of Boerger. Our statute provides (§ 6632, C. L. 1913):

"Any person who shall solicit an application for insurance upon the life of another shall, in any controversy between the assured or his beneficiary and the company issuing any policy upon such application, be regarded as the agent of the company and not the agent of the assured."

Ordinarily an insurance company is as much interested in retaining relations with its policy holders as it is in soliciting new business, and to this end applications for reinstatement are regarded with much the same favor as applications for new business. We are of the opinion that the definition of an agent laid down in the statute referred to includes one taking an application for reinstatement as well as one taking an original application. In fact, the counsel for the appellant in the instant case take a position that is entirely consistent with this construction of the statute for it is contended that, as the policy in question had lapsed, it could not be revived except a new contract be entered into by the parties; the new contract being, of course, an agreement to revive the policy.

In holding, however, that McGowan and Haigh were agents of the company in soliciting the reinstatement application, we do not hold that the company was necessarily bound by the representations that they made contrary to the express conditions of the contract which was being revived. But we do hold that their agency was one which lasted until the reinstatement was either effected or rejected, and, while their authority

was subject to such limitations as appear in the policy, that these in turn were capable of being extended by the action or nonaction of the company. The effect of this holding, in connection with the facts in the instant case, is that the note which the company mailed to its agent, Haigh, and which Haigh retained, must be regarded as remaining in its possession, and the failure to Haigh to notify Boerger must be treated as the failure of the company. We may readily assume that the company had the right to reject the application for reinstatement either on account of the nonpayment of the premium in the manner required or on account of a defective showing of insurability, but when it elected to reject the application on either or both of these grounds, it must be held to a knowledge of the transaction between its agents and the insured, and to have assumed the legal consequences of its failure to communicate its rejection to the applicant, provided it was under duty so to do. There is ample evidence in the record that Boerger was led to believe his note would be accepted for the premium, and that the application for reinstatement satisfied the requirements of the company. Certainly this evidence, in conjunction with the complete failure to return the note and to notify the insured that his application was rejected, would justly warrant the inference that the insured believed his reinstatement to have been completed, that he had become liable upon the note given for the premium, and that the company had, in fact, waived payment in cash. It is to be noted here that notwithstanding the return of the note to Haigh, the application, though defective, was retained by the company. Since we are of the opinion that the evidence warrants the inferences suggested as inferences of fact, it remains to determine whether or not these inferences may be effective in law as against the express provisions of the policy.

There is no rule of law or policy that prevents contracting parties from waiving provisions that are inserted for their benefit. As was said by the United States Supreme Court in a case involving policy stipulations similar to those in the instant case (Knickerbocker Insurance Co. v. Norton, 96 U. S. 234, L. ed. 689) :

"But a party always has the option to waive a condition or stipulation made in his own favor. The company was not bound to insist upon a forfeiture, though incurred, but might waive it. It was not bound to act upon the declaration that its agents had no power to make agreements or waive forfeitures; but might, at any time, at its option, give them

such power.   The declaration was only tantamount to a notice to the assured, which the company could waive and disregard at pleasure.   In either case, both with regard to the forfeiture and to the powers of its agent, a waiver of the stipulation or notice would not be repugnant to the written agreement, because it would only be the exercise of an option which the agreement left in it.   And whether it did exercise such option or not was a fact provable by parol evidence, as well as by writing, for the obvious reason that it could be done without writing."

As to the character of acts that may be construed as a waiver of policy stipulations for the benefit of an insurance company the same court has expressed what appears to us to be the sound doctrine.   In New York Life Insurance Co. v. Eggleston, 96 U. S. 572, 24 L. ed. 841, it is said:

"Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract.   The company is thereby estopped from enforcing the forfeiture.   The representations, declarations, or acts of an agent, contrary to the terms of the policy, of course will not be sufficient, unless sanctioned by the company itself."

The rule is stated in substantially the same language in Bacon on Life and Accident Insurance (4th ed.) § 602, where it is stated that the general principle has become well settled.   Authorities are cited to show its application to cases where defaulted premiums are paid, or where payment has been made in a different manner than that stipulated, and these acts are accompanied by circumstances indicating that the assured was acting upon an honest belief that the literal terms of the policy would not be enforced against him.   The company by its waiver is precluded from asserting its nonliability.   See Mobile Life Ins. Co. v. Pruett, 74 Ala. 487; Southern Life Ins. Co. v. Edward L. Kempton, 56 Ga. 339; Cotton State Life Ins. Co. v. Lester, 62 Ga. 247, 35 Am. Rep. 122; Andrus et al. v. Fidelity Mutual Life Insurance Co. Assoc., 168 Mo. 151, 67 S. W. 582; Wm. Goedecke v. Met. Life Ins. Co., 30 Mo. App. 601; Echols v. Mutual Life Ins. Co. of New York (Neb.) 184 N. W. 58; De Frece v. Nat. Life Ins. Co., 19 N. Y. Supp. 8.[1]   Applying the principle of these

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 64 Hun, 635.

authorities to the facts in the instant case, we are of the opinion that the company could waive the conditions of the policy regarding the lapsing for nonpayment and the reinstatement, and that under the evidence there was ample room for the jury to infer that it had in fact waived these conditions through its failure to properly act upon the application for reinstatement.

To the contention that the lapsed contract could not be revived without entering into a new contract completed by an offer and an acceptance, it need only be stated that there is no principle of law peculiarly applicable to insurance contracts which necessitates an actual communication of an acceptance in every instance. There is a well-defined rule of law, applicable to insurance contracts as well as contracts in general, that where the relations between parties have been such as to justify the offerer in expecting a reply, or where the offeree has come under some duty to communicate either a rejection or acceptance, his failure to communicate his rejection or to perform this duty may result in a legal assent to the terms of the offer. See Williston on Contracts, § 91. Within this principle we think there was a duty to return the note and communicate the rejection in the instant case at the peril of being held to the consequences of an assent to the reinstatement.

In the brief of the appellant some attention is given to the instructions of the court to the jury. As we read these instructions in the light of principles of law which we deem to be determinative of the case and in the light of the evidence, the appellant is not prejudiced by them.

The judgment appealed from is affirmed.


BRONSON, J., *concurs*.


GRACE, C. J. (concurring). The principles of law announced in this case in the opinion of Mr. Justice Birdzell are largely similar and to the same effect as those formerly announced by this court in the case of Carroll v. New York Life Insurance Co., 180 N. W. 523.


CHRISTIANSON, J., dissents.

ROBINSON, J. (dissenting). *In this case neither the complaint as amended, nor the evidence, states facts sufficient to constitute a cause of action.* There is no showing of a contractual obligation to pay the plaintiff $5,000, or any sum whatever.

On November 17, 1917, the insurance company made to Henry Boerger a $5,000 life insurance policy, naming as the beneficiary his adult nephew of 35 years. The policy is in evidence, and is made a part of the complaint. The annual premium was $296.80, payable each year for 20 years, and it was agreed, as is usual in such cases, that, in case of failure to pay the premium of each year within 31 days after it became due, the policy should lapse and become void. Boerger was a man of 55 years, a small German farmer on a half section 20 miles south from Beach, on section 20—137—105. Not having money to make the first payment, he gave his promissory note for $296.80, but never paid it. He permitted his policy to lapse by failing to pay the premium of the second year within 31 days after it became due. Then, in February, 1919, he made to the company a written application to reinstate his insurance, and offered his note for $296.80 and interest. He mailed the same to the company through Mr. Haigh, its local agent at Beach, and by letter of March 13, 1919, the company returned the note and denied the application. As the note was sent to the company by Mr. Haigh, it was returned to him, and it was kept by him in his office for several weeks with the expectation doubtless that Boerger would call there, as he had given the note at the office. Boerger did not call. He died without receiving the note into his own hands and without paying, or offering to pay, a dollar on the insurance policy, though the company had several times requested payment. Now the claim is made that the company is estopped from disputing payment, or that it has waived payment by reason of the fact that Haigh did not go and deliver the note to the maker. But Haigh was a mere go-between. He had no interest in the note. He could not eat it or use it any manner. In his hands the note was a mere scrap of waste paper of no use to him or to any living person. Then it is urged that McGowan, a general agent of the company, induced the deceased to make the note with an application for reinstatement on the assurance that it would be accepted. But to speak of McGowan as the general agent of the company is a great mistake, and it is not fair nor honest. His authority is in writing. It is special, narrow, and limited. He was merely authorized in six counties of North Dakota to re-

ceive applications for life insurance, and to send the same to the company for rejection or approval. Exhibit H. Now it should be too clear for argument: (1) That plaintiff has no. equity, as neither he nor his uncle have paid a dollar or a cent on the insurance policy. (2) There is no waiver. (3) There is no estoppel. There is no showing that the deceased was ever in any way deceived or misled to his prejudice. No showing that he was ever ready or willing to pay a dollar on the insurance or on any insurance, no showing that he was under any obligation to his adult nephew or that he was desirous of scrimping and of burdening himself that the nephew might perchance receive a good lump sum. Boerger complained of poor crops and high insurance rates, and it was with reluctance he offered the note and application to reinstate his policy. The plaintiff testifies that at a certain time McGowan and Haigh called at the house of the deceased; he testified as follows:

"Q. Did not your uncle say to McGowan and Haigh that he did not want to reinstate the policy? A. He talked that way. He said he was hard up, and did not feel that he could pay the premium. He said the poor crops made it hard to pay them big premiums."

In the face of such testimony it cannot be urged that if the note had been put into the hands of the deceased in due time and during his life he would have made any attempt to secure insurance from any other company, or that he would have done anything to reinstate his insurance.

The law of the case is as clear as to the facts. The plaintiff is in no position to claim a waiver or an estoppel, because he has no equity, and because neither he nor his uncle ever paid, or offered to pay, anything on the policy. It is a pure nudum pactum. A party is not estopped when there is no equity, no deception, no injury. To invoke the doctrine of estoppel it must appear: (1) That the party invoking it was misled by the acts or conduct of the other party. (2) That he changed his position, relying thereon, and was justified in so doing. (3) That he was prejudiced thereby, and that the other party was benefited. 21 Corpus Juris, 1205. Here there is no showing of a prejudice to the deceased; no showing of a benefit to the company; no showing that the deceased was deceived, or that he changed his position to his loss.

## Waiver.

*The doctrine of waiver differs little from estoppel. A party cannot*

*be waived into a contract without a consideration when there is no element of estoppel.*

"Waiver belongs to the family of estoppel, and the doctrine of estoppel lies at the foundation of the law of waiver." 40 Cyc. 255. "They are frequently used in the cases as convertible terms, especially in insurance contracts and in regard to forfeitures." *"Waiver is the voluntary surrender of a right.* Estoppel is the inhibition to assert it from the mischief that has followed." "Waiver depends upon what one himself intends to do. An estoppel depends upon what he causes another to do." 40 Cyc. 256-258. "In order to constitute waiver, the right or privilege must be in existence. There can be no waiver of a nonexistent and lost right." 40 Cyc. 258. "Waiver is a voluntary act. A voluntary choice is the essence of the act, and not mere negligence." 40 Cyc. 259-262.

In writing an opinion it is common for judges to quote the general language of some other judge or court and completely ignore the facts on which the language is based. Thus in this case the general language of a judge is cited as conclusive in favor of the plaintiff without any reference to the facts, while the facts show that the general language has little bearing. In Knickerbocker Insurance Co. v. Norton, 96 U. S. 234, the facts presented a strong case of equity, estoppel, and waiver. The policy in suit was dated April 20, 1867. The premium was $385 a year. The deceased had made annual payments for eight years. He had paid over $2,000. Norton died on August 3, 1875, and the company refused payment on the ground that his policy was forfeited by a failure to pay the last premium note. The note had been settled on a payment of $50 in cash, and plaintiff gave for the balance two promissory notes, payable, respectively, in two and three months. The company had been in the habit of allowing their agents to extend payments for that time, and when the company refused to receive payment the deceased made to it a legal tender of the full amount due. The case presents the strongest appeal to equity and conscience and fair dealing. *The wonder is that it should be cited to sustain a case like this, where there was never a payment or offer to pay.*

And so there is cited the general language of the United States Supreme Court in N. Y. Life Ins. Co. v. Eggelston, 96 U. S. 572, 24 L. ed. 841. The suit was on a $5,000 life policy made November 11, 1868. The premium was $306 a year, payable semiannually, half on November

11th and half on May 11th in each year. The insured died on January 5, 1872. The defense was a forfeiture of the policy by failure to pay the last installment of premiums which fell due November 11, 1871. The insured did not know the agent to whom payments should be made, because the company had been changing its agents, and so he had telegraphed the company for instructions, and he made a legal tender of payment in December, 1871. He had paid over $1,000, and had made a legal tender of the last installment. Surely that does not apply to a case where a party never paid nor offered to pay a cent. Justice Birdzell gives a reference to several state decisions which are probably no stronger than those of the United States Supreme Court. The general language of a decision means little or nothing until we know the facts on which the general language is based. We challenge any one to cite a decision sustaining a judgment against an insurance company in a case of this kind, a case in which there is no equity, no payment, no attempt to make payment, and no excuse for the default; a case in which the note offered for premium was refused and returned to the party from whom it was received. Surely the case presents no equity, no waiver, no estoppel. There is not a particle of evidence to sustain the verdict. Judgment should be reversed.